IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLSTATE INSURANCE COMPANY,                 3:15-CV-01766-BR

             Plaintiff,                     OPINION AND ORDER

v.

HECTOR CEPEDA, PILAR WRIGHT,
and ROSALIE DALZELL,

             Defendants.


DOUGLAS F. FOLEY
VERNON S. FINLEY
Douglas Foley & Associates, PLLC
13115 N.E. 4th Street
Suite 260
Vancouver, WA 98684
(360) 883-0636

        Attorneys for Plaintiff

Moloy K. Good
Good Law Clinic, PLLC
211 E. 11th Street, Suite 104
Vancouver, WA 98660
360-608-5346

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Allstate Insurance Company's Motion (#15) for Summary Judgment.  For the reasons that follow, the Court **GRANTS** Allstate's Motion and **DISMISSES** this matter **with prejudice**.

## BACKGROUND

Defendant Rosalie Dalzell is the owner and operator of a rental unit located at 3823 N. Overlook, Portland, Oregon (the Unit).

On October 9, 2011, Dalzell obtained a Homeowners Insurance Policy from Plaintiff Allstate Insurance Company related to the Unit.

In March 2012 Defendants Hector Cepeda and Pilar Wright submitted an application to rent the Unit through Performance Properties, a rental management company.  On March 13, 2012, Cepeda and Wright's rental application was accepted.  At some point Cepeda and Wright agreed to rent the Unit, and they signed a one-year lease to begin April 22, 2012.

On May 9, 2012, Cepeda drove to the Unit from Los Angeles to drop off "some . . . belongings" before Cepeda and Wright moved into the Unit later in May.  On May 9, 2012, Cepeda met Dalzell for the first time.  Cepeda spent the day on May 9, 2012, unloading his belongings into the Unit and stayed overnight in

the Unit.

On May 10, 2012, Cepeda drove back to Los Angeles.

On May 17, 2012, Cepeda and Wright received a call from Performance Properties advising them that Dalzell no longer wanted to rent the Unit to Cepeda and Wright. According to Cepeda and Wright, Dalzell accused Cepeda of reversing a deadbolt lock on the Unit that caused Cepeda to have access to the attic. Performance Properties advised Cepeda and Wright that Dalzell had moved all of their belongings into the garage, had changed the locks on the Unit, and "had tried to file a police report" regarding the allegedly reversed deadbolt.

Ultimately Cepeda and Wright had to find another place to live.

On April 3, 2015, Cepeda and Wright filed an action in Multnomah County Circuit Court against Dalzell in which they alleged (1) Dalzell refused to rent the Unit to Cepeda and Wright because of their national origin in violation of Oregon Revised Statute § 659A.421 ; (2) Dalzell refused to rent the Unit to Cepeda and Wright because they have two sons, ages 8 and 11, in

violation of Oregon Revised Statute § 659A.421; and (3) Dalzell[1]
was negligent when she failed in her "duty to use reasonable or
ordinary care to avoid violating" Oregon Revised Statute
§ 659A.421 and/or when she failed to "hire, supervise and train
her agents and employees who were charged with ensuring
compliance with" Oregon Revised Statute § 659A.421.

At some point Dalzell tendered defense of Cepeda and
Wright's state-court action to Allstate pursuant to Dalzell's
Homeowners Policy.

On September 18, 2015, Allstate filed a Complaint for
Declaratory Relief in this Court in which Allstate seeks a
declaration that it does not have a duty to defend or to
indemnify Dalzell in the underlying action.

On January 5, 2016, Allstate filed a Motion for Summary
Judgment as to both the duty to defend and the duty to indemnify.
The Court took Allstate's Motion under advisement on February 18,
2016.

----

[1] In their state-court complaint Cepeda and Wright assert
their negligence claim against "Defendant Bostik and Defendant
Contractor." Those Defendants are not in the case caption, there
are not any allegations against either of them in the complaint,
and the facts underlying Cepeda and Wright's negligence claim do
not involve anyone but Dalzell. The Court, therefore, assumes
Plaintiffs' assertion of the negligence claim against "Defendant
Bostik and Defendant Contractor" is a typographical error, and
the Court analyzes this claim as asserted against Dalzell.

4 - OPINION AND ORDER

**DISCUSSION**

Allstate seeks summary judgment on the ground that discrimination in the rental of property is an intentional act, and, therefore, it is not an occurrence under the policy. In addition, or in the alternative, Allstate asserts the actions of Dalzell alleged in the state-court complaint are excluded from coverage by the Intentional Acts Exclusion in Dalzell's policy. Allstate, therefore, seeks a declaration that it is not obligated to defend or to indemnify Dalzell and requests the Court to issue an order permitting Allstate to withdraw from the defense of Dalzell in the underlying action.

Dalzell asserts Cepeda and Wright do not allege any "intent to harm" in their state-court complaint. According to Dalzell, therefore, Cepeda and Wright's claims allege an occurrence under the policy and are not excluded from coverage by the Intentional Acts Exclusion. Thus, Dalzell asserts Allstate is not relieved from the obligation to defend or to indemnify Dalzell in the underlying action.

**I.     Insurance Contract Interpretation**

Under Oregon law the construction of a contract is a question of law for the court. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 649 (2006)(citing *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Ore.*, 313 Or. 464, 470 (1992)). The Court's task is to "ascertain the intention of the parties to

5 – OPINION AND ORDER

the insurance policy." *Id.* at 649-50 (citing Or. Rev. Stat.
§ 742.016).   The Court accomplishes this task "based on the terms
and conditions of the insurance policy." *Id.*

      "If an insurance policy explicitly defines the phrase in
question, [the Court] appl[ies] that definition." *Id.* at 650.
*See also Joseph Educ. Ass'n v. Joseph Sch. Dist. No. 6*, 180 Or.
App. 461, 467 (2002).

>      If the policy does not define the phrase in
>      question, [the Court] resort[s] to various aids
>      of interpretation to discern the parties' intended
>      meaning.   Under that interpretive framework, we
>      first consider whether the phrase in question has
>      a plain meaning, *i.e.*, whether it is susceptible
>      to only one plausible interpretation.   If the
>      phrase in question has a plain meaning, we will
>      apply that meaning and conduct no further
>      analysis.   If the phrase in question has more than
>      one plausible interpretation, we will proceed to
>      the second interpretive aid.   That is, we examine
>      the phrase in light of 'the particular context in
>      which that [phrase] is used in the policy and the
>      broader context of the policy as a whole.   If the
>      ambiguity remains after the court has engaged in
>      those analytical exercises, then any reasonable
>      doubt as to the intended meaning of such [a]
>      term[] will be resolved against the insurance
>      company.   However, . . . a term is ambiguous
>      . . . only if two or more plausible inter-
>      pretations of that term withstand scrutiny, *i.e.*,
>      continue[] to be reasonable despite our resort to
>      the interpretive aids outlined above.

*Id.*

      When "evaluating whether an insurer has a duty to defend[,]
the court looks only at the facts alleged in the complaint" and
the terms of the policy.  *Ledford v. Gutoski*, 319 Or. 397, 400
(1994).   *See also Nat'l Union Fire Ins. Co. of Pittsburgh v.*

*Starplex Corp.*, 220 Or. App. 560, 573 (2008) ("[w]hether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy.").

The duty to indemnify "is independent of the duty to defend." *Ledford*, 319 Or. at 403 (citation omitted). "Even when an insurer does not have a duty to defend based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." *Id.* (citation omitted). "In order for summary judgment to be appropriate on the duty to indemnify, there must be no genuine issue of material fact, and the moving party must be entitled to judgment as a matter of law." *Id.* (citations omitted).

## II.  Insurance Policy Language

Dalzell's insurance policy with Allstate provides in pertinent part:

> **Section II — Family Liability and Guest Medical Protection**
>
> **Coverage X**
> **Family Liability Protection**
>
> **Losses We Cover Under Coverage X:**
> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy

applies, and is covered by this part of the
policy.

Compl., Ex. 2 at 34 (emphasis in original).  The policy also

provides the following limitation of coverage:

**Losses We Do Not Cover under Coverage X:**

1.    **We** do not cover any **bodily injury** or **property
      damage** intended by, or which may reasonably
      be expected to result from the intentional or
      criminal acts or omissions of, any **insured
      person.**  This exclusion applies even if:

      a)    such **insured person** lacks the mental
            capacity to govern his or her conduct;
      b)    such **bodily injury** or **property damage** is
            of a different kind or degree than
            intended or reasonably expected; or
      c)    such **bodily injury** or **property damage** is
            sustained by a different person than
            intended or reasonably expected.

      This exclusion applies regardless of whether or
      not such **insured person** is actually charged with,
      or convicted of a crime.

*Id* (emphasis in original).  The policy contains the following

definitions:

4.    **"Bodily injury"** – means physical harm to the
      body, including sickness or disease, and
      resulting death, except that **bodily injury**
      does not include:
      a)    any venereal disease;
      b)    Herpes;
      c)    Acquired Immune Deficiency Syndrome
            (AIDS);
      d)    AIDS Related Complex (ARC);
      e)    Human Immunodeficiency Virus (HIV); or
            any resulting symptom, effect,
            condition, disease or illness related to
            (a) through (e) listed above.

                              *  *  *

8 – OPINION AND ORDER

9.  **"Occurrence"** – means an accident, including
    continuous or repeated exposure to
    substantially the same general harmful
    conditions during the policy period,
    resulting in **bodily injury** or **property
    damage**.

10. **"Property damage"** – means physical injury to
    or destruction of tangible property,
    including loss of its use resulting from such
    physical injury or destruction.

Compl., Ex. 2 at 17-18 (emphasis in original).

## III. Duty to Defend

As noted, "[w]hether an insurer has a duty to defend an
action against its insured depends on two documents:  the
complaint and the insurance policy." *Starplex Corp.*, 220 Or.
App. at 573.  Cepeda and Wright allege three claims in their
complaint:  two for discrimination in violation of Oregon Revised
Statute § 659A.421 and one claim for negligence.

### A.  Cepeda and Wright's First and Second Claims for Housing Discrimination in Violation of § 659A.421

As noted, Cepeda and Wright do not specifically allege
in their First and Second Claims for violation of § 659A.421 that
Dalzell intended to cause them harm when she allegedly refused to
rent the premises to them because of either their national origin
or their familial status.  The Oregon Supreme Court, however, has
recognized the nature of certain acts necessarily gives rise to a
mandatory inference that there was the intent to harm.  *See*
*Nielsen v. St. Paul Co.,* 283 Or. 277, 281 (1978)("There are some

9 - OPINION AND ORDER

intentional acts the nature of which is such that it must necessarily be concluded that there was an intention to injure."). In addition, the Oregon Court of Appeals has held when the intent to injure is inferred, the insured's conduct is not an "accident" or "occurrence" under a liability policy. *See Falkenstein's Meat Co. v. Maryland Cas. Co.*, 91 Or. App. 276, 279-80 (1988).

In *Falkenstein's Meat* an employee sued the insured alleging the insured company changed the employee's job position and reduced his hours of work in retaliation for his complaints that the insured "was not providing a safe place of employment and that the vehicle which he was assigned to operate was unsafe." 91 Or. App. at 278. The insured tendered defense of the employee's action to its insurance company. The insurance company refused to defend on the ground that the alleged conduct by the insured was not an occurrence and was specifically exempt from coverage under an intentional-acts exclusion. *Id.* The insured brought a declaratory judgment action "to determine whether [the insurance company] had a duty to defend" the employee's action. The insured asserted the employee's complaint "involve[d] an occurrence" within the meaning of the policy because the complaint did not allege the insured "intended the harm which occurred as a result of the conduct." *Id.* at 279. The insurance company, in turn, asserted the allegation of

retaliation by the employer "involve[d] intentional rather than
accidental conduct and, therefore, [was] not within the policy
definition of 'occurrence.'" *Id.* The Oregon Court of Appeals
concluded plaintiff's complaint did "not allege a specific type
of intentional harm. However, retaliatory and discriminatory
conduct pursuant to [Oregon's Whistleblower statute,] ORS
654.062(5)(a)[,] are acts from which an intention to cause harm
must necessarily be inferred." *Id.* at 280. The court,
therefore, concluded the conduct alleged in the employee's
complaint was not an "occurrence," and, therefore, the insurer
did not have a duty to defend the employer. *Id.*

In *Groshong. v. Mutual of Enumclaw Insurance Company*,
143 Or. App. 450 (1996), the court examined the holding of
*Falkenstein's Meat* in the context of a claim for housing
discrimination based on familial status in violation of the Fair
Housing Act (FHA), 42 U.S.C. § 3601. Specifically, the plaintiff
in the underlying FHA action alleged she inquired about renting a
second-floor apartment in an apartment complex owned by the
insured. The apartment manager informed the plaintiff that the
apartment complex "did not allow small children on the second
floor because of safety concerns." *Id.* at 452. As a result, the
plaintiff was unable to rent a unit in the apartment complex.
The United States Department of Justice brought an action on
behalf of the plaintiff against the apartment-complex owner for

11 - OPINION AND ORDER

housing discrimination in violation of the FHA. The apartment-complex owner tendered defense of the action to his insurance company. The insurance company, however, declined to defend the apartment-complex owner. The apartment-complex owner entered into a settlement and consent order with the Department of Justice and the plaintiff. The insurance company declined to indemnify the apartment-complex owner. The apartment-complex owner then filed an action against his insurance company asserting the company had breached its insurance contract by failing to defend and to indemnify the apartment-complex owner. The insurance company asserted it had declined to defend and to indemnify the apartment-complex owner on the ground that, among other things, it "would be against public policy to provide insurance coverage for a claim of intentional housing discrimination." *Id.* at 454. The trial court entered a judgment for the insurance company on other grounds, and the apartment-complex owner appealed. The Oregon Court of Appeals affirmed the judgment for the insurance company and concluded Oregon public policy "preclude[d] insurance coverage" for the discrimination claim. *Id.* The Court of Appeals noted Oregon's frequently reiterated policies that "[i]nsurance coverage for the protection of one who intentionally inflicts injury upon another is against public policy," and "[t]here are some intentional acts the nature of which is such that it must necessarily be concluded that there

was an intention to injure." *Id.* at 457 (quotations omitted).
The court noted it had previously concluded "disparate treatment"
discrimination claims like the claim at issue in *Groshong*
"necessarily allege[] intentional injury," and, therefore,
disparate-treatment discrimination claims did not fall within an
insurance policy's express coverage for "any negligent act, error
or omission of the insured." *Id.* (quotation omitted).  The court
noted it had not, however, resolved "whether intentional
discrimination would be uninsurable as a matter of policy."  *Id.*
at 458 (quotation omitted).  The court then

> reach[ed] the question expressly reserved in
> *School District No. 1* and conclude[d] that public
> policy precludes insurance coverage of claims
> alleging "disparate treatment" discrimination.
> Such discrimination necessarily implicates an
> intention to injure.  As we noted in *School
> District No. 1*, such discrimination "means
> treating an individual less favorably *because*" of
> some legally protected status.  58 Or. App. at 701
> (emphasis in original).  *Falkenstein's Meat Co. v.
> Maryland Casualty Co.*, 91 Or. App. 276, 280
> (1988), is instructive.  There, we held that a
> claim that the insured employer had engaged in
> retaliatory and discriminatory conduct against an
> employee in violation of ORS 654.062(5)(a), the
> occupational safety "whistle blower" statute, was
> not covered under the terms of the employer's
> comprehensive general liability insurance policy.
> We so concluded despite the fact that the
> employee's complaint did not explicitly allege
> that the employer intended the harm that occurred
> as a result of the discriminatory conduct.
>
>                          *  *  *
>
> The same is true of a claim of "disparate
> treatment" housing discrimination.  The "natural
> and intended consequence" of such discrimination

> is to "cause some type of harm" to the putative
> renter or purchaser based on his or her legally
> protected status.  Such a claim alleges conduct
> "from which an intention to cause harm must
> necessarily be inferred."  *Id.*  Thus, public
> policy precludes insurance coverage of such
> claims.

*Id.* at 458-59.  Although *Groshong* involved a claim of housing

discrimination based on familial relations under the FHA, the

court's holding in *Groshong* is equally applicable to the claims

of Cepeda and Wright for housing discrimination based on national

origin or familial relations in violation of § 659A.421.  *See*

*McGary v, City of Portland*, 386 F.3d 1259, 1270-71 (9th Cir.

2004)(Section 659A.421 should be interpreted "in the same manner

as [its] federal counterpart," the FHA).  In their First and

Second Claims Cepeda and Wright allege conduct from which an

intention to cause harm must be inferred because the "natural and

intended consequence" of such discrimination is to cause some

type of harm to the putative renter.  The Court, therefore,

concludes public policy precludes a duty to defend those claims.

### B.   Negligence Claim of Cepeda and Wright

Dalzell asserts Allstate has a duty to defend in this

matter because Cepeda and Wright also allege a claim for

negligence, which, by definition, is not an intentional tort and,

therefore, may be an occurrence under the policy and/or is not

excluded by the Intentional Acts Exclusion.

In their negligence claim Cepeda and Wright allege in

14 - OPINION AND ORDER

pertinent part that

> [Dalzell] had a duty to operate her affairs in a
> manner free from unlawful discrimination.
> [Dalzell] further had a duty to hire, train,
> supervise and discipline her employees or agents
> in a fashion that assures compliance with state
> laws.
>
> [Dalzell] had a duty to use reasonable or ordinary
> care to avoid violating Plaintiffs right to rent a
> dwelling unit free from discrimination.
>
> [Dalzell] breached her duties to Plaintiffs by
> refusing to rent to them in violation of their
> rights.  [Dalzell] further breached her duties to
> Plaintiffs by failing to hire, supervise and train
> her agents and employees who were charged with
> insuring compliance with Plaintiffs' rights.
>
> [Dalzell] created a foreseeable risk of harm to
> Plaintiffs through, among other things, by
> refusing to rent to Plaintiffs due to their
> national origin and familial status.

Compl., Ex. A at 9-10.  Dalzell asserts courts have held

violations of the FHA do not require discriminatory intent, and,

in any event, Cepeda and Wright have not alleged any intent in

their negligence claim.  According to Dalzell, therefore, in

their Third Claim for negligence Cepeda and Wright allege an

"occurrence" under the policy, and, thus, coverage is not

excluded under the Intentional Acts Exclusion.

The Ninth Circuit has repeatedly held FHA claims

alleging disparate-treatment discrimination in housing such as

those at issue here require a "showing of discriminatory intent."

*Massbaum v. WNC Mgmt*, 361 F. App'x 904, 905 (9th Cir. 2010)

(citing *McDonald v. Coldwell Banker*, 543 F.3d 498, 505 n.7 (9th

15 - OPINION AND ORDER

Cir. 2008)).  *See also Green v. Ca. Court Apartments, LLC*, 321 F.
App'x 589, 591 (9th Cir. 2009).  That same element is required
for a claim of disparate-treatment discrimination under
§ 659A.421 and Oregon does not recognize a claim for negligent
discrimination in housing.

 Even though Cepeda and Wright couch their Third Claim
in the rubric of negligence, they are, in fact, asserting a claim
for discrimination in housing under § 659A.421.  The Oregon
Supreme Court has made clear that when analyzing the duty to
defend, "a court's focus should be on the conduct" alleged in the
claim rather than the label given to the claim.  *See, e.g.,*
*Ledford*, 319 Or. 397.  Here Cepeda and Wright allege Dalzell had
a duty to "abide by § 649A.421" and to avoid violating that
statute and Dalzell created the risk of harm by refusing to rent
to Cepeda and Wright due to their national origin and/or familial
status.  Under the cloak of negligence Cepeda and Wright's Third
Claim is, in fact, one for violation of § 659A.421, and, as with
their First and Second Claims, the Court must infer an intent to
discriminate.  The Court, therefore, concludes public policy also
precludes a duty to defend as to the Third Claim of Cepeda and
Wright.

 Accordingly, the Court grants Allstate's Motion for
Summary Judgment as to the issue of the duty to defend, declares
Allstate is not obligated to defend Dalzell in the underlying

16 - OPINION AND ORDER

action, and declares Allstate may withdraw from the defense of
Dalzell in the underlying action.

## IV.  Duty to Indemnify

Allstate also moves for summary judgment as to its alleged
duty to indemnify Dalzell in the underlying action.  As noted,
the duty to indemnify "is independent of the duty to defend."
*Ledford*, 319 Or. at 403 (citation omitted).  "Even when an
insurer does not have a duty to defend based on the allegations
in the initial complaint, the facts proved at trial on which
liability is established may give rise to a duty to indemnify if
the insured's conduct is covered."  *Id.* (citation omitted).  "In
order for summary judgment to be appropriate on the duty to
indemnify, there must be no genuine issue of material fact, and
the moving party must be entitled to judgment as a matter of
law."  *Id.* (citations omitted).

As noted, in *Groshong* the Oregon Court of Appeals also
addressed whether the insurer had a duty to indemnify the
apartment-complex owner against the claims of housing
discrimination in violation of the FHA.  The court first
concluded the allegations in the complaint "facially state[d] a
claim of 'disparate treatment'" even though the underlying
complaint did not specifically state it was a claim for disparate
treatment:

> [The apartment-complex owner's] policy [of not
> renting second-floor apartments to families with

children] was not framed in facially neutral
terms, such as refusing to rent to persons who
presented safety or noise concerns.  Instead, the
policy was applied, without distinctions for
individual circumstances, to all persons falling
within a statutorily protected class.  That is the
essence of "disparate treatment" discrimination.

*Id.* at 461.  The Court of Appeals then concluded:  "Because

public policy precludes insurance coverage of such

discrimination, [the insurer] cannot be liable for failing to

defend or indemnify [the apartment-complex owner] against [the

underlying plaintiff's] claims."  *Id.* (citing *Isenhart v. Gen.*

*Cas. Co. of Am.*, 233 Or. 49, 53 (1962)("We hold that a clause in

a contract of insurance purporting to indemnify the insured for

damages recovered against him as a consequence of his intentional

conduct in inflicting injury upon another is unenforceable by the

insured on the ground that to permit recovery would be against

public policy.  Therefore, the insurance policy in the present

case must, in effect, be regarded as excluding such coverage.").

     Cepeda and Wright allege Dalzell refused to rent the Unit to

them on the basis of their national origin or familial status.

As in *Groshong*, Dalzell's refusal was not "framed in facially

neutral terms," but instead applied to "persons falling within a

statutorily protected class."  Cepeda and Wright's state-court

complaint, therefore, alleges disparate-treatment housing

discrimination.  Thus, as in *Groshong*, the Court concludes

Allstate "cannot be liable for failing to . . . indemnify"

because "public policy precludes insurance coverage of such discrimination."

Accordingly, the Court grants Allstate's Motion for Summary Judgment as to the issue of its duty to indemnify Dalzell.


## **CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiff Allstate Insurance Company's Motion (#15) for Summary Judgment and **DISMISSES** this matter **with prejudice.**

IT IS SO ORDERED.

DATED this 6th day of May, 2016.


_____

ANNA J. BROWN
United States District Judge

19 - OPINION AND ORDER